**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN GREENE, *et. al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO. 2:10-cv-00038 |
| v. | ) | |
| | ) | JUDGE SARGUS |
| AB COASTER HOLDINGS, INC., | ) | |
| | ) | MAGISTRATE KEMP |
| Defendant. | ) | |
| | ) | |
| | | |
| AB COASTER HOLDINGS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 2:10-cv-00234 |
| | ) | |
| v. | ) | JUDGE SARGUS |
| | ) | |
| BRIAN GREENE, *et. al.*, | ) | MAGISTRATE KEMP |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF GREENES' BRIEF IN SUPPORT OF MOTION FOR SUMMARY**
**JUDGMENT TO CANCEL U.S. TRADEMARK REGISTRATION NO. 3,407,362**

3896843.2

## <u>TABLE OF CONTENTS</u>

I.   Introduction and Summary. ...................................................................................1

II.  Statement of Undisputed Facts. ........................................................................ 3

     A.   Facts Related to Improper Assignment in Violation of ...............................3

     B.   Facts Related to Misleading the U.S. Trademark Office ...........................4

III. Argument. ........................................................................................................ 7

     A.   The AB COASTER trademark registration is void because the
          assignments to Tristar Products and Ab Coaster Holdings violated the
          prohibition
          against assigning Intent-to-Use trademark applications in .......................8

          1.   The intent-to-use application was assigned prior to filing a
               statement of use in violation of 15 U.S.C. § 1060(a)(1). ................. 9

          2.   Tristar Products was not the successor to an ongoing and
               existing business of Bodytime Wellness. ....................................10

     B.   The AB COASTER trademark registration should be cancelled because
          it presented false and misleading information to the United States
          Patent
          and Trademark Office to secure registration of the mark. .......................12

          1.   Ab Coaster's statement that the Ab Coaster product does not
               contain "wheels" is objectively false. ...........................................12

          2.   Ab Coaster's statements were material to the registration. .........14

          3.   Ab Coaster intentionally deceived the Trademark Office to obtain
               the registration for the "Ab Coaster" mark. .................................16

IV.  Conclusion. .................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ........................................................................................................7

*Barrett v. Whirlpool Corp.,*
556 F.3d 502 (6th Cir. 2009) .........................................................................................7

*Fair Isaac Corp. v. Experian Info. Solutions Inc.,*
711 F.Supp. 2d 991 (D. Minn. 2010) ................................................................... 14, 18

*Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.,*
989 F.2d 985 (8th Cir. 1993) .......................................................................................14

*Grand Canyon West Ranch LLC v. Hualapai Tribe*
88 U.S.P.Q.2D 1501 (TTAB 2008) .............................................................................12

*Greenlon, Inc. of Cincinnati v. Greenlawn, Inc.,*
542 F. Supp. 890 (S.D. Ohio 1982) ..............................................................................8

*Herschler v. Gateway Products, Inc.,*
1993 U.S. Dist. LEXIS 2003 (D. Colo.) .....................................................................18

*In re Babies Beat Inc.,*
13 U.S.P.Q.2d 1729 (TTAB 1990) ..............................................................................14

*In re Bose Corp.,*
580 F.3d 1240 (Fed. Cir. 2009) ...................................................................................12

*In re Cheezwhse.com, Inc.,*
85 U.S.P.Q.2d 1917 (TTAB 2008) ..............................................................................15

*In re DTI Partnership LLP,*
67 U.S.P.Q.2d 1699 (TTAB 2003) ..............................................................................14

*The Clorox Co. v. Chemical Bank,*
40 U.S.P.Q.2d 1098 (TTAB 1996) .................................................................. 8, 10, 11

*White v. Baxter Healthcare Corp.,*
533 F.3d 381 (6th Cir. 2008) ........................................................................................7

ii

*WMH Tool Group, Inc. v. Woodstock International, Inc.*,
  2009 U.S. Dist. LEXIS 125325 (N.D. Ill. Dec. 9, 2009)................................................. 16, 17

**STATUTES**

15 U.S.C. § 1060 ...........................................................................................................passim

15 U.S.C. § 1064(3)...........................................................................................................12

15 U.S.C. § 1119 ...............................................................................................................7

**OTHER AUTHORITIES**

37 C.F.R. § 3.16 ...............................................................................................................8

FED. R. CIV. P. 56.............................................................................................................7

3896843.2

## I.    Introduction and Summary.

This motion is for summary judgment on Count Seven of the Greenes' First Amended Complaint (case no. 38, dkt. 23) and on the Second Claim for Relief of Ab Coaster Holdings' complaint (case no. 238, dkt. 1).  Both claims rise or fall on the validity of Ab Coaster's U.S. Trademark Registration No. 3,407,362 for the mark AB COASTER.

This motion is based on the documentary evidence produced by Ab Coaster Holdings and public records of the U.S. Patent and Trademark Office.  On October 14, 2011, Ab Coaster Holdings certified that its discovery responses were complete and correct consistent with Rule 26. (*See* Dkt. 69.)  This matter is therefore ripe for decision by the Court.

U.S. Trademark Registration No. 3,407,362 should be cancelled for two reasons:

<u>First</u>, the application for the subject trademark was assigned in violation of 15 U.S.C. § 1060(a)(1), which prohibits the assignment of intent-to-use trademark applications prior to the filing of a statement of use. An intent-to-use trademark application is an application filed for a proposed mark based on the future intent to use that mark in commerce. Because trademark rights arise only from actual use, before the mark is actually used there is no trademark and thus no assignable interest.

The trademark law is certain that assigning an intent-to-use application before the applicant files evidence of use (e.g. the "statement of use") renders any future registration void *ab initio*. 15 U.S.C. § 1060(a)(1). Here the intent-to-use application was filed on September 11, 2006 and assigned on December 11, 2006.  The statement of use was not filed until January 22, 2008, more than one year later.  The only exception to the statutory

1

prohibition is where the applicant assigns the intent-to-use application to a successor of an ongoing and existing business (such as an acquisition or the consolidation of a subsidiary into a parent company). The undisputed evidence illustrates that was not the situation for the assignment of the intent-to-use application for registration of the AB COASTER trademark. As a result, the trademark registration is void *ab initio.*

Second, during prosecution of the subject trademark application, David Augustine, a vice president of Ab Coaster Holdings, Inc., to secure the registration, misrepresented to the U.S. Trademark Office that the exercise machine marketed under the AB COASTER trademark did not have coasters or wheels. The Trademark Examiner required Ab Coaster to state whether the exercise device contained "coasters or other wheels." In response, Mr. Augustine denied the existence of coasters or wheels on the exercise machine, contrary to statements in the Ab Coaster *Owner's Manual and Training Guide.* Mr. Augustine submitted to the Trademark Office the cover page of an Ab Coaster *Owner's Manual* as evidence that the AB COASTER mark was in use, but withheld page 3 of that same manual that stated in capital letters "KEEP BODY PARTS, HANDS AND FEET AWAY FROM THE SEAT, WHEELS AND THE CURVED TRACK…" Augustine also withheld other material pages of the manual, as well as the patent applications for the Ab Coaster exercise machine which disclosed "wheels" as part of the device. Mr. Augustine's false statements of material fact misleading the Trademark Examiner require cancellation of the registration for the AB COASTER mark.

## II.    Statement of Undisputed Facts.

The following facts are undisputed and form the basis for the relief requested herein:

### A.    Facts Related to Improper Assignment in Violation of 15 U.S.C. § 1060.

1.    On September 11, 2006, Bodytime Wellness, LLC filed an intent-to-use application (s/n 78/971,078) for the mark "Ab Coaster" for an exercise machine.  Ex. 1, AB01113.

2.    On December 11, 2006, Bodytime Wellness assigned the pending intent-to-use trademark application (Serial No. 78/971,078) for the mark "Ab Coaster" to Tristar Products, Inc.  Ex. 2, AB01803.

3.    Also on December 11, 2006, Bodytime Wellness, and individuals Don Brown and Robert Nelson executed a licensee agreement with Tristar (the "Tristar License").  The Tristar License agreement granted Tristar the rights "to manufacture, use, distribute, sell, advertise, promote and otherwise exploit the [Ab Coaster] Product."  Ex. 3, AB01812.

4.    The Ab Coaster product debuted commercially in March 2007.  Ex. 4, Ab Coaster Reponses to Interrogatories No. 7, 10.

5.    On June 17, 2007, Tristar Products assigned the pending intent-to-use application to Ab Coaster Holdings, Inc. Ex. 2, AB01804.

6.    On January 22, 2008, David Augustine, acting as vice president of Ab Coaster Holdings, Inc., filed a statement of use with the USPTO setting forth the date of first use of the AB COASTER trademark as March 1, 2007.  Ex. 1, AB01143

**B.** **Facts Related to Misleading the U.S. Trademark Office.**

7.      During the pendency of the "Ab Coaster" trademark application, the Trademark Office issued an Office Action on February 8, 2007 requiring additional information about the Ab Coaster product.  In the Office Action, the Trademark Examiner inquired about the significance of the word "coaster."  *See* Ex. 5.  The Examiner specifically asked if the exercise machine related to the trademark contained or was intended to contain coasters or wheels.  The Office Action stated in part:

> Applicant must specify whether "COASTER" has any significance, aside from trademark significance, in the exercise equipment trade or industry. 37 C.F.R. §2.61(b). Specifically, the applicant must answer the following questions:
> 1) Does "COASTER" have any meaning or significance in the exercise equipment industry?
> 2) Do applicant's goods contain "COASTERS" or other wheels?
> 3) Are applicant's goods intended to contain "COASTERS" or other wheels?
> 4) In the context of applicant's goods, what is meant by the word "COASTER?"
> 5) Does "COASTER" have any other meaning or significance as applied to the goods?

Ex. 1, AB01123.

8.      On July 11, 2007, David Augustine, on behalf of Ab Coaster Holdings, responded to the Office Action asserting that the exercise machine did not have and was not intended to contain coasters or wheels.  Augustine responded to the Examiner's questions as follows:

> 1) Does "COASTER" have any meaning or significance in the exercise equipment industry?
>         NO.

2) Do applicant's goods contain "COASTERS" or other wheels?

NO. HOWEVER, THE GOODS CONTAIN PLASTIC BEARINGS INSIDE THE KNEE CARRIAGE, WHICH ARE NOT VISIBLE TO THE USER, TO AID IN MOVEMENT OF THE KNEE CARRIAGE. THE EXERCISE DEVICE DOES NOT CONTAIN ANY WHEELS OR COASTERS.

3) Are applicant's goods intended to contain "COASTERS" or other wheels?

NO.

4) In the context of applicant's goods, what is meant by the word "COASTER?"

THE DESIGN OF THE PRODUCT INCLUDES A CURVED TRACK, WHICH BEARS A VISUAL RESEMBLANCE TO AN AMUSEMENT PARK RIDE SUCH AS A "ROLLER COASTER." APPLICANT'S GOODS DOES NOT INCLUDE AN ACTUAL ROLLER COASTER, BUT IS AN EXERCISE DEVICE FOR THE ABDOMINAL MUSCLES.

5) Does "COASTER" have any other meaning or significance as applied to the goods?

NO.

Ex. 1, AB01131.

9. Augustine was aware of U.S. Reg. No. 2,632,152 for the mark COASTER for an exercise machine. In response to the same Office Action, Augustine established that Ab Coaster Holdings was the owner of the "COASTER" mark. Ex. 1, AB01131 ("Applicant claims ownership of U.S. Registration Number(s) 2632152." (the "COASTER" mark)).

10. During examination of the COASTER trademark application, the trademark Examiner also inquired about the significance of the word "coaster." The Examiner stated that if "COASTER-which means to slide to glide, has any significance in the relevant trade

or as to the goods indentified. … [then] the mark may be merely descriptive of the goods and subject to refusal of registration on the Principal Register under Trademark Act Section 2(e)(1), 15 U.S.C. Section 1052(e)(1)."  Ex. 5, Application S/N 75/651,644 at 30-31.

11.     The Ab Coaster *Owner's Manual and Training Guide* on page 3 states that the Ab Coaster product contains "wheels".

## IMPORTANT SAFETY INFORMATION

**IMPORTANT: Please read and follow all instructions thoroughly before using your Ab Coaster®.**

- Maximum user weight is 300 lbs.
- ALWAYS USE CAUTION WHEN GETTING ON AND OFF THE AB COASTER®. READ INSTRUCTIONS ABOUT PROPER WAYS TO GET ON AND OFF THE AB COASTER®.
- KEEP BODY PARTS, HANDS AND FEET AWAY FROM THE SEAT, WHEELS AND THE CURVED TRACK WHILE USING THE AB COASTER®. SEVERE INJURY CAN RESULT IF BODY PARTS, HANDS OR FEET ARE PLACED ON TRACK WHILE SOMEONE IS USING THE UNIT.

Ex. 6, AB01505 (emphasis added).

12.     Augustine submitted the cover page of the Ab Coaster *Owner's Manual* and Training Guide to the U.S. Trademark Office, but <u>did not submit</u> page 3 or other pages identifying the wheels of the Ab Coaster exercise machine. *See* Ex. 1, AB01148; *cf.* Ex. 6, AB01503 (same cover page with complete *Owner's Manual*).

13.     The patents purportedly directed to the Ab Coaster exercise machine describe the product as containing "wheels".  Both patents state:

> The sliding mechanism 570 can be a rolling element, such as <u>wheels</u>, a plurality of bearings, such as ball bearings or roller bearings, or a gliding mechanism such as a four bar linkage.

Ex. 7, U.S Patent No. 7,455,633, col. 7, ll. 11-15; Ex. 8, U.S Patent No. 7,485,079, col. 8, ll. 11-14 (emphasis added).

14.     David Augustine was involved in the prosecution of the '633 patent and '079 patent, which Ab Coaster Holdings alleges claim the Ab Coaster exercise machine.  *See* Ex. 4, Response to Interrogatory No. 11 ("David Augustine, Vice President of Ab Coater, [was] involved in research and development, testing, preparation and prosecution of related patent applications...").

## III.    Argument.

The Court should grant summary judgment cancelling the AB COASTER trademark registration, because the pleadings, discovery, and disclosure materials on file demonstrate that there is no genuine issue as to any material fact that the Ab Coaster trademark registration is void.  *See* FED. R. CIV. P. 56; *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

The party opposing the motion may not rest upon the mere allegations and denials contained in its pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008).  Under this standard, Ab Coaster Holdings must respond to the Greenes' motion with specific facts showing a genuine issue.  The "mere existence of some alleged factual dispute between the parties will not defeat and otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Here, the undisputed documentary evidence reveals that there are no genuine issues of material fact, and that the Greenes are entitled to summary judgment cancelling the AB COASTER trademark registration.  *See* 15 U.S.C. § 1119 ("the court may … order the cancelation of [trademark] registrations").

### A. The AB COASTER trademark registration is void because the assignments to Tristar Products and Ab Coaster Holdings violated the prohibition against assigning Intent-to-Use trademark applications in 15 U.S.C. § 1060.

Assignment of an intent-to-use trademark application prior to filing a verified statement-of-use violates 15 U.S.C. § 1060, and voids the application as well as any resulting registration of the mark. *The Clorox Co. v. Chemical Bank*, 40 U.S.P.Q.2d 1098, 1996 TTAB LEXIS 15 (TTAB 1996). Trademark Act Section 10(a)(1), codified at 15 U.S.C. § 1060(a)(1), provides:

> A registered mark or a mark for which an application to register has been filed shall be assignable with the good will of the business in which the mark is used, or with that part of the good will of the business connected with the use of and symbolized by the mark. Notwithstanding the preceding sentence, <u>no application to register a mark under section 1(b) shall be assignable prior to the filing of an amendment under section 1(c) to bring the application into conformity with section 1(a) or the filing of the verified Statement-of-Use under section 1(d), except for an assignment to a successor to the business of the applicant, or portion thereof, to which the mark pertains, if that business is ongoing and existing.</u>

15 U.S.C. § 1060(a)(1), (emphasis added); *see also* 37 C.F.R. § 3.16; Trademark Manual of Examining Procedure (TMEP) § 501.01(a)(6th ed. 2009).

The prohibition on assigning intent-to-use application in 15 U.S.C. § 1060(a)(1) embodies the fundamental principle that a trademark is only assignable with its associated goodwill. *See Greenlon, Inc. of Cincinnati v. Greenlawn, Inc.*, 542 F. Supp. 890, 893 (S.D. Ohio 1982). An assignment without goodwill does not transfer any legal rights to the assignee. *Id.* Since goodwill only accrues with use of the mark, prior to actual use there is no "trademark" and no assignable interest in the purported mark.

Consequently, the Trademark Trial and Appeal Board has, when necessary, voided applications, like this one, assigned in violation of the statute. *See, e.g.*, *Clorox*, 40 U.S.P.Q.2d at 1104; *Gray v. Weiss*, 2000 TTAB LEXIS 152, at \*2 (TTAB 2000) (non-precedential); *Pfizer, Inc. v. Hamerschlag*, 2001 TTAB LEXIS 729, at \*\*11-12 (TTAB 2001) (non-precedential); *Railrunner N.A., Inc. v. New Mexico Dept. of Transp.*, 2008 TTAB LEXIS 58, at \*6-7 (TTAB 2008) (non-precedential) ("any improper transfer results in a void application, and any resulting registration must be cancelled").

The only exception permitted by the statute is when the intent-to-use application is transferred "to a successor to the business of the applicant." 15 U.S.C. § 1060(a)(1). When the applicant has multiple businesses, the exception requires the assignee to be the successor to that "portion" of the applicant's business "to which the mark pertains." *Id.* However, "even that transfer is only permissible if the applicant actually has such a business, *i.e.*, if the applicant is already providing the goods or services recited in the application." *Railrunner*, 2008 TTAB LEXIS 58, at \*7 (emphasis added).

### 1.  The intent-to-use application was assigned prior to filing a statement of use in violation of 15 U.S.C. § 1060(a)(1).

There can be no dispute that the intent-to-use application resulting in the "AB COASTER" registration was assigned prior to the filing of a statement-of-use. As set forth above, the intent-to-use application was filed on September 11, 2006. *See* Ex. 1.  The application was assigned on December 11, 2006. *See* Ex. 2.  The statement-of-use was not filed until January 22, 2008. *See* Ex. 1, AB01143-44.  The assignment document dated prior to the statement-of-use is sufficient to establish *prima facie* that the trademark was transferred in violation of 15 U.S.C. § 1060(a)(1).  *See Railrunner*, 2008 TTAB LEXIS 58, at \*7

9

("submission of the trademark assignment … is sufficient to establish *prima facie* that the subject trademark was transferred contrary to Trademark Act § 10 [i.e. 15 U.S.C. § 1060]").

As explained further below, the assignment does not meet the statutory exception, and thus renders the application and resulting registration void *ab initio*.  *See Clorox*, 40 U.S.P.Q.2d at 1104 ("any such prohibited assignment is not only invalid …, but the prohibited assignment also voids the application or any resulting registration").

> ### 2.     Tristar Products was not the successor to an ongoing and existing business of Bodytime Wellness.

Ab Coaster cannot rely on the statutory exception to cure this assignment because Bodytime Wellness did not have "an ongoing and existing business" in December 2006 at the time of the assignment.  The "Ab Coaster" mark was not used in commerce until March 2007, when the "Ab Coaster Elite" debuted.  *See* Ex. 4, Answer to Interrogatory No. 7. David Augustine confirmed the first use date of 03/01/2007 in the sworn Statement of Use filed with the U.S. Trademark Office on behalf of Ab Coaster Holdings.  *See* Ex. 1, AB01143-44; *see also* Ex. 4, Answer to Interrogatory No. 10 (noting first display of Ab Coaster machine in March 2007; noting "first offer for sale, first sale, and first public use of any machine that embodied the [Ab Coaster] invention therefore were all in or after March of 2007").

Even if Bodytime Wellness had an ongoing and existing business (which it did not), Tristar Products was not a successor to that business.  The Tristar License (Ex. 3) demonstrates that Tristar Products was not a successor to Bodytime Wellness's business, providing that "[u]pon termination of the this Agreement, Tristar agrees to re-assign the Patents and Trademark to Inventors and BTW…."  Ex. 3, ¶ 1.3.  As with the assignment in

*Clorox* that was found to violate the statute, the license agreement here evidences that Bodytime Wellness <u>was to continue its business</u> and could regain title to the assigned mark upon termination of the agreement.  *See In Clorox*, 40 U.S.P.Q.2d at 1104 (finding registration invalid for violation of § 1060, and noting provision of assignment document that would transfer title back to assignor upon termination of agreement).

Moreover, after the trademark assignment, Bodytime Wellness intended to and did pursue the Ab Coaster business in the commercial market separate and apart from the activities of Tristar Products in the home consumer market.  *See* Ex. 3, AB01813.  Both at the time of the improper assignment and in later executed agreements, Ab Coaster Holdings, Tristar Products, and the inventors acknowledged Bodytime Wellness's planned, and later, actual use of the assigned mark.  *See* Ex. 9, Amended Exclusive License Agreement; Ex. 10, Intellectual Property Management Agreement.  These agreements—to which Ab Coaster Holdings and its member(s) were a party—unambiguously demonstrate that Tristar Products was not a successor to Bodytime Wellness's business, but rather a parallel ongoing business in the exercise equipment market.

The assignment from Bodytime Wellness to Tristar Products, more than one year prior to the statement of use, does not fall within the exception.  The Ab Coaster trademark application and resulting registration are therefore void *ab initio* under 15 U.S.C. § 1060(a)(1). This alone is sufficient grounds to cancel the Ab Coaster trademark registration.

**B.    The AB COASTER trademark registration should be cancelled because it presented false and misleading information to the United States Patent and Trademark Office to secure registration of the mark.**

"As a practical matter, the USPTO depends on the accuracy of information provided by applicants and registrants regarding an applicant's or registrant's goods and services.  The USPTO has no ability to verify the truth of identifications and other critical information independently." *Grand Canyon West Ranch LLC v. Hualapai Tribe*, 88 U.S.P.Q.2D 1501, 1509, 2008 TTAB LEXIS 33 (TTAB 2008).   Consequently, when an applicant or registrant intentionally provides false and misleading information, it is said that he has committed fraud against the USPTO.

Cancellation of a registered trademark is warranted when: (1) the applicant makes a false statement to the USPTO, (2) the statement is material, and (3) the false statement is made with intent to deceive the Trademark Office.  *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009); *see also* 15 U.S.C. § 1064(3).

In the present case, Ab Coaster knowingly and intentionally made a false, material representation in connection with the application for the "Ab Coaster" mark.  As detailed below, this action warrants cancellation of the registered trademark.

**1.    Ab Coaster's statement that the Ab Coaster product does not contain "wheels" is objectively false.**

On July 11, 2007, David Augustine, on behalf of Ab Coaster Holdings, Inc., asserted to the U.S. Trademark Office that the Ab Coaster exercise machine did not contain wheels. *See* Ex. 1, AB01131.  The trademark Examiner specifically asked: "Do applicant's goods contain 'COASTERS' or other wheels?" *Id.*  Augustine answered "NO." *Id.*  The Examiner also asked: "Are applicant's goods intended to contain 'COASTERS' or other wheels?"  *Id.*

12

Again, Augustine answered "NO." *Id.*  These assertions are objectively false—Ab Coaster Holdings' own documents belied Mr. Augustine's statements to the Trademark Office.

The Ab Coaster *Owner's Manual and Training Guide* repeatedly identifies wheels on the exercise machine throughout the manual.   Most prominently, the "Important Safety Information" section identifies the wheels of the device as a potential safety hazard:

## IMPORTANT SAFETY INFORMATION

**IMPORTANT: Please read and follow all instructions thoroughly before using your Ab Coaster®.**

- Maximum user weight is 300 lbs.
- ALWAYS USE CAUTION WHEN GETTING ON AND OFF THE AB COASTER®. READ INSTRUCTIONS ABOUT PROPER WAYS TO GET ON AND OFF THE AB COASTER®.
- KEEP BODY PARTS, HANDS AND FEET AWAY FROM THE SEAT, WHEELS AND THE CURVED TRACK WHILE USING THE AB COASTER®. SEVERE INJURY CAN RESULT IF BODY PARTS, HANDS OR FEET ARE PLACED ON TRACK WHILE SOMEONE IS USING THE UNIT.

*See* Ex. 6, AB01505 (page 3) (emphasis added).

The *Owner's Manual* further identifies wheels on the parts list and illustration of the Ab Coaster exercise machine, namely front leg wheel (08), spacing wheel (36), roller wheel (39), and roller wheel axle (40).  *See* Ex. 6, AB01513 (page 11).

The *Owner's Manual* further identifies wheels in the Assembly Instructions where it states, "attach [the] rear foot (without <u>wheels</u>) to rear curved track.  Attach front foot (with <u>wheels</u>) to front post using the 2 pre-attached bolts."  *See* Ex. 6, AB01506 (page 4) (emphasis added).

The *Owner's Manual* further identifies wheels in the Moving and Storing Instructions. *See* Ex. 6, AB01512 (page 10).  "There are 2 <u>wheels</u> attached to the front leg support of the Ab Coaster…" *Id.* (emphasis added).  "Push down on the handle bars tilting the rear up until the front <u>wheels</u> are engaged." *Id.* (emphasis added).

Ab Coaster Holdings' alleged patents also identify wheels as a feature of the Ab Coaster exercise device.  Both the '633 patent and '079 patent state "the sliding mechanism 570 can be a rolling element, such as <u>wheels</u>, a plurality of bearings, such as ball bearings or roller bearings, or a gliding mechanism such as a four bar linkage." *See* Ex. 7,  Ex. 8 (emphasis added).

Mr. Augustine's statement to the Trademark Office that the Ab Coaster device did not have and was not intended to have "wheels" was patently false.

### 2.    Ab Coaster's statements were material to the registration.

The false representation is material if "a reasonable examiner would have considered it important in deciding whether to issue" the registration.  *Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.*, 989 F.2d 985, 992 (8th Cir. 1993).

Augustine's false and misleading denial of the existence of wheels is material as a matter of law.  <u>First</u>, the statements were the last submission prior to allowance of the trademark application.  *See Fair Isaac Corp. v. Experian Info. Solutions Inc.*, 711 F.Supp. 2d 991, 1000 (D. Minn. 2010) ("With regard to materiality, the submission of these statements by Fair Isaac was the only intervening event between the PTO's initial rejection of Fair Isaac's registration application and the subsequent issuance of the notice of allowance.").

<u>Second</u>, the statements were a direct response to the trademark Examiner's inquiry. Applicants are obligated to respond to examiner inquiries, and failure to respond warrants refusal of the application.  *In re DTI Partnership LLP*, 67 U.S.P.Q.2d 1699, 1701, 2003 TTAB LEXIS 171 (TTAB 2003).  The Trademark Trial and Appeal Board has upheld the refusal of registration based on the applicant's failure to provide information requested under this rule.

*In re Babies Beat Inc.*, 13 U.S.P.Q.2d 1729, 1990 TTAB LEXIS 1 (TTAB 1990) (affirming the Examiner's refusal of registration for failure to submit patent information regarding product configuration). As failure to respond to the trademark Examiner's inquiry would have resulted in refusal of the application, Augustine's misleading statement led to the allowance and ultimately the registration of the Ab Coaster trademark making Augustine's statements material.

Third, Augustine's statements are also material because they dissuaded the Trademark Examiner from refusing registration on the grounds that the mark was merely descriptive of the goods. In the prior trademark application for the "COASTER" mark, the trademark Examiner also inquired about the significance of the word "coaster". *See* Ex. 5, pg. 31. The Examiner asked the applicant to indicate whether "COASTER" had any significance relevant to the goods identified. *Id.* The Examiner clarified that if the word COASTER had significant to the goods, then "the mark may be merely descriptive of the goods and subject to refusal of registration. *Id.* Had Augustine acknowledged that the Ab Coaster exercise machine contained "wheels" the Trademark Examiner would likely have refused registration, just as the Trademark Examiner for the COASTER application had foreshadowed. By denying the existence of the wheels on the Ab Coaster exercise machine, Augustine prevented the Examiner from assessing whether the mark is merely descriptive and therefore unregisterable. *See* 15 U.S.C. § 1052(e)(1); *In re Cheezwhse.com, Inc.*, 85 U.S.P.Q.2d 1917, 2008 TTAB LEXIS 4 (TTAB 2008).

3.      **Ab Coaster intentionally deceived the Trademark Office to obtain the registration for the "Ab Coaster" mark.**

Intent is a question of fact, and, as such, is usually not appropriate for summary judgment.  But, in a case such as this, there can be no genuine dispute as to the question of intent.  Augustine's actions, both by statement and omission, demonstrate an intent to deceive the Trademark Office.

a.      **Ab Coaster withheld key pages of the *Owner's Manual*.**

As discussed previously, Augustine, on behalf of Ab Coaster, submitted the cover page of the Ab Coaster *Owner's Manual* to the Trademark Office with the statement of use, but withheld page 3 that identifies the wheels of the Ab Coaster exercise machine.  *See* Ex. 1, AB01148.  Augustine did not submit any of the other pages from that same *Owner's Manual* that contained the word "wheels."  *See* Ex. 6 (pgs. 3, 4, 10, 11).  By submitting the cover page, while omitting the pages showing the exercise machine had "wheels," Augustine demonstrated intent to withhold material information from the Trademark Office and to deceive the Trademark Examiner.

In an analogous situation, another district court found the selective submission of magazine pages probative of intent to deceive the Trademark Office.  *WMH Tool Group, Inc. v. Woodstock International, Inc.*, 2009 U.S. Dist. LEXIS 125325, at *7 (N.D. Ill. Dec. 9, 2009).  In *WMH Tool Group*, the Trademark Examiner requested information regarding an application to register the "color white" as applied to certain types of equipment identified in WMH's application.  *Id.*  The Examiner asserted that the proposed mark was merely ornamental and could not operate to indicate the source of the goods.  *Id.* at *8.  To better assess the nature of the mark, the Examiner required the applicant to indicate "whether

competitors produce the same or similar goods in the identified color and in colors other than the identified color" such as by providing "color photographs and color advertisements showing competitive colors." *Id.* In response to this inquiry, WMH attached examples of competitive manufactures' machines in a variety of colors, including pages from a well-known magazine in the industry as examples of "industry standard colors." *Id.* at *10.

The *WMH Tool* court observed that "other pages from the same [magazine] issue, depicting white-colored goods made by WMH's competitors, were omitted." *Id.*

The court concluded that a reasonable fact finder could conclude that the omission of the key pages of the magazine "constitute an attempt to defraud the PTO." *Id.* at *31. In the present case, the inference of intent to deceive is even more persuasive in that the pages withheld from the Trademark Office were pages from Ab Coaster's **own documents**, specifically the Ab Coaster *Owner's Manual and Training Guide*.

      **b.**      **The presentation to the Trademark Examiner contradicted Ab Coaster's own patents.**

The statement that the Ab Coaster did not contain coasters or other wheels is contradicted by Ab Coaster's disclosure of the exercise machine in pending patent application for the '633 patent and the '079 patent. Both the '633 patent and the '079 patent disclosed "wheels" in the description of the exercise machine. *See* Ex. 7 and Ex. 8. But when asked by the Trademark Examiner, Augustine denied the existence of these wheels in the Ab Coaster exercise machine. *See* Ex. 1, AB01131. Moreover, Augustine never disclosed these patent applications to the Trademark Examiner in spite of their relevance to the inquiry posed.

17

Ab Coaster cannot argue that Augustine was unaware of these patents or their disclosure, because Augustine was involved in the preparation and prosecution of the patent applications. *See* Ex. 4, Answer to Interrogatory No. 11. These documents, and Augustine's knowledge of them, demonstrate that Mr. Augustine <u>knew</u> the Ab Coaster product contained wheels and withheld key information from the Trademark Examiner to secure allowance of the trademark application.

Under remarkably similar circumstances, the Federal Circuit affirmed cancellation of a trademark registration when the applicant made a statement to the Trademark Office contradictory to the disclosure of its patent application. *See Herschler v. Gateway Products, Inc.*, 1993 U.S. Dist. LEXIS 2003 (D. Colo.), *cancellation of trademark registration affirmed by Herschler v. Gateway Products, Inc.*, 1995 U.S. App. LEXIS 40363 (Fed. Cir. 1995). In *Herschler*, as here, the Trademark Examiner required the applicant to identify whether a term, "MSM", had any significance in the relevant trade or industry. *Id.* The applicant denied that MSM had a special meaning, but the applicant's patent application disclosed MSM as the common abbreviation of a chemical compound. *Id.* Where the applicant has knowledge or information, such as the disclosure of a pending patent application, but makes contradictory statements to the Trademark Office, cancellation of the trademark registration is warranted. *See id.*; *see also Fair Isaac Corp.*, 711 F. Supp. 2d at 999.

As in *Herschler*, Augustine's actions constitute fraud on the Trademark Office and warrant cancellation of the resulting registration.

### c.     Ab Coaster knew a descriptiveness refusal was likely.

If Augustine had been forthcoming and had admitted that the Ab Coater exercise product contained wheels, the mark "Ab Coaster" would likely have been refused registration on the basis that the mark was merely descriptive of the goods just as the prior Trademark Examiner had forecast for the "COASTER" trademark application.

As previously discussed, in the prior trademark application for the mark COASTER, the Trademark Examiner raised a similar question regarding the relevance of the term "coaster" and clarified that a refusal for descriptiveness was likely if the term coaster had a meaning associated with the goods involved. *See* Ex. 6. Augustine was familiar with the COASTER registration as he identified it as being owned by Ab Coater Holdings in the same response in which he denied the existence of wheels on the Ab Coaster exercise product. *See* Ex. 1, AB01131. Ab Coaster thus knew the Examiner could, and likely would, deny registration for the mark "Ab Coaster" based on descriptiveness.

Therefore, withholding pages of the *Owner's Manual* for the very exercise product at issue, contradicting the disclosure of pending patent applications with which he was directly involved, and knowing the likely consequence of admitting that the Ab Coaster exercise product had wheels, this presents a case where the combination of factors as shown by a party's own documents indisputably demonstrate deceptive intent warranting summary judgment.

**IV.     Conclusion.**

In view of the documentary evidence produced by Ab Coaster Holdings, there is no genuine dispute that the subject trademark application was assigned in violation of 15 U.S.C. § 1060(a)(1).  Moreover, there is no genuine dispute Ab Coaster misled the Trademark Examiner to procure the Ab Coaster trademark registration.  For either reason, the intent-to-use application (s/n 78/971,078) and resulting registration (no. 3,407362) for the AB COASTER mark are void.  The AB COASTER trademark registration must therefore be cancelled.

The Greenes respectfully request the Court grant this motion and enter judgment cancelling U.S. Trademark Registration No. 3,407,362.

Respectfully submitted,

/s/Arland T. Stein
Arland T. Stein, Trial Attorney (0007310)
Rex W. Miller, II (0085324)
HAHN LOESER & PARKS LLP
65 East State Street, Suite 1400
Columbus, Ohio 43215
Tele:   614/221-0240
Fax:    614/221-5909
E-mail:  astein@hahnlaw.com
         rmiller@hahnlaw.com

Attorneys for Plaintiffs
Brian Greene, Penny Greene, &
Professional Billing Consultants, Inc.

3896843.2

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2011, I electronically filed the foregoing Plaintiffs' Brief In Support Of Motion For Summary Judgment To Cancel U.S. Trademark Registration No. 3,407,362 with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to the following:

N. Trevor Alexander, Esq.
Chet J. Bonner, Esq.
John T. Wiedemann, Esq.
CALFEE, HALTER & GRISWOLD LLP
21 East State Street, Suite 1100
Columbus, Ohio 43215-4243
Tel: (614) 621-1500/ Fax: (614) 621-0010
Email: talexander@calfee.com
        cbonner@calfee.com
        jwiedemann@calfee.com

Noam Kritzer, Esq.
Edward P. Bakos, Esq.
BAKOS & KRITZER
147 Columbia Turnpike
Florham Park, New Jersey 07932
Tel:  (908) 273-0770 / Fax: (973) 520-8260
Email: nkritzer@bakoskritzer.com
        ebakos@bakoskritzer.com

Attorneys for Defendant
Ab Coaster Holdings, Inc.

                              /s/Arland T. Stein
                              Attorney for Plaintiffs
                              Brian Greene, Penny Greene, &
                              Professional Billing Consultants, Inc.

3896843.2