UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRIAN GREENE, et al.,

      Plaintiffs,

           v.

AB COASTER HOLDINGS, INC.,

      Defendant.

                              Case No. 2:10-CV-38
                              JUDGE ALGENON L. MARBLEY
                              Magistrate Judge Terence P. Kemp

AB COASTER HOLDINGS, INC.,

      Plaintiff,

           v.

                              Case No. 2:10-CV-234
                              JUDGE ALGENON L. MARBLEY
                              Magistrate Judge Terence P. Kemp

BRIAN GREENE, et al.,

      Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendant Ab Coaster Holdings, Inc.'s Motion to

Reactivate Docket Number 26, Motion to Dismiss Plaintiffs' First Amended Complaint and for

Leave to Amend Same (Doc. No. 71[1]), which is **DENIED AS MOOT**; Plaintiffs Brian and

Penny Greenes' Motion for Summary Judgment on Lack of Standing and Unenforceability of

Certain Patents (Doc. No. 78), which is **DENIED AS MOOT IN PART AND DENIED IN**

**PART**; Plaintiffs Brian and Penny Greenes' Motion for Summary Judgment to Cancel U.S.

---

[1]The Court's reference to documents reflect the filings in Case Number 2:10-cv-38.

Trademark Registration No. 3,407,362 (Doc. No. 81), which is **GRANTED**; Ab Coaster

Holdings, Inc.'s First Motion to Dismiss Plaintiffs' False Marking Claim (Doc. No. 105), which

is **DENIED AS MOOT**; and Ab Coaster Holding Inc.'s Second Motion to Dismiss False

Marking Claim (Doc. No. 128), which is **GRANTED**.

## I. BACKGROUND

Ab Coaster Holdings, Inc. ("Ab Coaster"), through its licensee, manufactures and

distributes an exercise machine known as the Ab Coaster abdominal exercise device. Plaintiffs

Brian and Penny Greene ("the Greenes") purchased for their daughter an Ab Coaster exercise

device, which they subsequently sold on eBay. (Third Am. Compl. ¶ 9; Doc. No. 124.) The

Greenes purchased additional abdominal exercise devices that they "believed to be Ab Coaster

products." *Id.* ¶ 10. After learning that the Greenes were offering for sale abdominal exercise

devices that they advertised on commercial internet websites as Ab Coaster abdominal exercise

devices, and determining that the Greenes did not purchase the devices from Ab Coaster nor had

it authorized the Greenes to be dealers, Ab Coaster sent the Greenes a letter demanding that they

cease selling "the counterfeit devices [they] similarly refer to as 'Ab Coasters.'" (Third Am.

Compl., Ex. 9; Doc. No. 124–9.)

On January 13, 2010, the Greenes filed in this Court a complaint for declaratory judgment

that they have not infringed any of Ab Coaster's patents, that the patents are invalid or

unenforceable, that Ab Coaster's trademark registration is invalid and should be cancelled, and

that they have not infringed Ab Coaster's trademark or engaged in unfair competition. (Doc. No.

1.) Ab Coaster filed a motion to dismiss the Greenes' complaint. (Doc. No. 10.)

On January 20, 2010, Ab Coaster filed a complaint against the Greenes for patent and

2

trademark infringement and unfair competition in the United States District Court for the Central District of California, alleging that the Greenes were selling counterfeit Ab Coaster exercise devises. The Central District of California transferred Ab Coaster's case to this Court where it was assigned Case Number 2:10-cv-234. That case was then consolidated with the case filed by the Greenes against Ab Coaster, Case Number 2:10-cv-38.

On April 6, 2010, the Greenes filed their first amended complaint. (Doc. No. 23.) Ab Coaster filed a motion to dismiss the Greenes' first amended complaint. (Doc. No. 26.) Before the Court could rule on Ab Coaster's motion to dismiss, the Greenes filed for relief under Chapter 7 of the United States Bankruptcy Code. (Doc. No. 46.) On September 10, 2010, the Court deferred any further action in this consolidated case pending a decision of the bankruptcy court as to whether the automatic stay in force as a result of the Greenes' bankruptcy would be lifted. (Doc. No. 55.)

On August 23, 2011, the bankruptcy court lifted the automatic stay. (Doc. No. 63 at 2, Ex. 3.) On September 9, 2011, the Magistrate Judge held a status conference and issued an order resetting the schedule in this action. (Doc. No. 68.) On October 18, 2011, Ab Coaster filed its Motion to Reactivate Docket Number 26, Motion to Dismiss Plaintiffs' First Amended Complaint and for Leave to Amend Same. (Doc. No. 71.) Both parties then filed motions for leave to file amended complaints. (Doc. Nos. 84, 85.)

Ab Coaster filed its motion to amend its complaint on December 1, 2011. (Doc. No. 85.) In the memorandum in support of that motion, Ab Coaster explained that its proposed amended complaint omitted the causes of action for patent infringement, and added claims for copyright infringement and deceptive trade practices. (Doc. No. 85-1 at 3–4.)

3

In the Greenes' motion to amend, also filed on December 1, 2011, they asked permission to add certain factual allegations in support of one of their patent claims and to amend their false marking claim to include allegations of "competitive injury." (Doc. No. 84 at 3–4.)

On January 30, 2012, Magistrate Judge Kemp granted the parties' motions to amend their complaints. (Doc. No. 98.) That order rendered moot Ab Coaster's Motion to Reactivate Docket Number 26, Motion to Dismiss Plaintiffs' First Amended Complaint and for Leave to Amend Same. (Doc. No. 71.)

On February 13, 2012, Ab Coaster filed its First Motion to Dismiss Plaintiffs' False Marking Claim, *i.e.*, Count 10 of the Greenes' second amended complaint. (Doc. No. 105.) On April 4, 2012, before Ab Coaster's motion was considered by the Court, the Greenes moved for leave to file a third amended complaint so that they could withdraw without prejudice the qui tam portion of their false marking claim and add factual allegations to support the competitive injury portion of that claim. (Doc. No. 114.) The Magistrate Judge granted the Greenes' request to withdraw the qui tam portion of Count 10 and denied their request to add factual allegations to further support that claim. (Doc. No. 122.) Thus, the third amended complaint contains the same claims that were alleged in the second amended complaint except for those amendments to Count 10. (Doc. No. 124.)

On July 9, 2012, Ab Coaster filed their Second Motion to Dismiss Plaintiffs' False Marking Claim (Doc. No. 128), which addresses the portion of Count 10 that remained after the Magistrate Judge permitted the Greenes to amend a portion of that claim. This motion has been fully briefed and is ready for disposition. Ab Coaster's filing of this motion to dismiss rendered moot their previous motion to dismiss Count 10. (Doc. No. 105.)

4

Prior to the filing of the third amended complaint, the Greenes had filed their Motion for Summary Judgment on Lack of Standing and Unenforceability of Certain Patents (Doc. No. 78) and Brief in Support (Doc. No. 79) and their Motion for Summary Judgment to Cancel U.S. Trademark Registration No. 3,407,362 (Doc. No. 81). The Greenes request oral argument on those motions. (Doc. Nos. 100, 101.) Because those motions are addressed to, *inter alia*, claims that are the same in the Greenes' second and third amended complaints, the motions were not rendered moot by the Greenes' third amended complaint. These two summary judgment motions are fully briefed and are ripe for review. (Doc. Nos. 91, 101.)

## II. SUMMARY JUDGMENT MOTIONS

### A. Standard

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby, Inc.*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than some metaphysical doubt as to the material facts"). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

5

## B. The Greenes' Motion Related to the Ab Coaster Patents

The Greenes move for summary judgment on Ab Coasters' patent infringement claims related to United States Patent Numbers 7,485,079 ("the '079 patent"), 7,611,445 ("the '445 patent"), D584,367 ("the '367 patent), and 7,585,263 ("the '263 patent"). The Greenes contend that they are entitled to summary judgment on the '079, the '445, and the '367 patents because Ab Coaster does not have standing to assert those claims, and that they are entitled to summary judgment on the '079, the '445, and the '263 patents because those three patents are unenforceable pursuant to the terminal disclaimers filed in the respective applications for patent.

### 1. Standing

The Greenes contend that Ab Coaster lacks standing to bring its patent infringement claims related to the '079, the '445, and the '367 patents. Ab Coaster point out, however, that in its second amended complaint it withdrew all of its claims for patent infringement, and therefore, there is no longer a case or controversy with regard to those claims. Ab Coaster indicated in its motion to amend its complaint that it "removed [the patent infringement] cause[s] of action because the August 23, 2011 Order by the United States Bankruptcy Court for the Southern District of Ohio prohibits Ab Coaster from proceeding with collection efforts against the Greenes in the event Ab Coaster is granted a judgment for patent infringement." (Doc. No. 85-1 at 3, Ex. B.) In response to its withdrawal of the patent infringement claims, Ab Coaster anticipated that the Greenes would request this Court to dismiss their "declaratory judgment causes of action for non-infringement of the patents-at- issue." (Doc. No. 91 at 6.)

The Greenes, however, reply that they do not intend to withdraw their declaratory judgment causes of action related to the patents. The Greenes take issue with the way in which

6

Ab Coaster frames the bankruptcy court's order, asserting that the order merely requires that once

the instant "dispute is resolved, any claim or award must be submitted to the bankruptcy court for

administration by the bankruptcy trustee." (Doc. No. 101 at 2.) The Greenes further posit that

they are entitled to a determination on Ab Coaster's patent infringement claims:

> [A]fter accusing the Greenes of patent infringement, Ab Coaster cannot
> now unilaterally withdraw years after the case was filed. As the Supreme Court
> has stated: "A party seeking a declaratory judgment of invalidity presents a claim
> independent of the patentee's charge of infringement." *Cardinal Chem. Co.* [*v.
> Morton Int'l*], 508 U.S. [83,] 96 [(1993)]. In fact, the Supreme Court
> "emphasized the importance to the public at large of resolving questions of patent
> validity." *Id.* at 100.
>
> In this case, the Greenes have sought a declaratory judgment of invalidity
> and unenforceability with respect to multiple patents which Ab Coaster asserted
> [and] later sued on . . . . Ab Coaster's unilateral decision to withdraw its claims
> for past infringement goes nowhere, and suggests that Ab Coaster may pursue
> claims against the Greenes in the future.

*Id.*

While the Court agrees that the Greenes' request for a declaration of invalidity presents a

claim independent of Ab Coaster's patent infringement claims, their protestation regarding Ab

Coaster's withdraw of its patent infringement claims is of no moment here. This is because on

January 30, 2012, the Magistrate Judge granted Ab Coaster's request to withdraw those claims.

(Doc. No. 98.) They are simply no longer before this Court.

That being said, the Greenes' declaratory judgment claims are still before the Court.

(Doc. No. 124 ¶¶ 34, 42, 61.) In their summary judgment motion, however, the Greenes do not

request that the Court determine whether they have infringed on the patents, and instead only

argue that Ab Coaster lacks standing to bring patent infringement claims for the '079, the '445,

and the '367 patents. (Doc. No. 79 at 7–14.) Because Ab Coaster requested, and was granted,

7

permission to withdraw their claims for relief for patent infringement, there is no longer any controversy before the Court regarding these claims and the Greenes' motion for summary judgment on these claims has been rendered moot. With regard to their declaratory judgment claim for unenforceability, the Greenes move for summary judgment only with regard to the '079, the '445, and the '263 patents (Doc. No. 79 at 14–17), which the Court addresses *infra* in the Terminal Disclaimers section.

### 2. Terminal Disclaimers

The Greenes request a declaration that the '079, the '445, and the '263 patents are rendered unenforceable by their respective terminal disclaimers. "A terminal disclaimer ties the affected patents together; they expire on the same date and are enforceable only during periods in which they are owned by the same person." 3A-9 Chisum on Patents, § 9.04[5] at 9-107 (2003). *See also* 37 C.F.R § 1.321(c) ("A terminal disclaimer . . . must . . . include a provision that any patent granted on that application . . . shall be enforceable only for and during such period that said patent is commonly owned with the application or patent which formed the basis for the rejection."). The Greenes contend, and Ab Coaster does not disagree, that when the common ownership requirement is not satisfied, the patent at issue is rendered unenforceable. (Doc. No. 79 at 15) (citing to *In re Van Orum*, 686 F.2d 937, 948 (C.C.P.A 1982) (upholding the common ownership requirement incorporated in 37 C.F.R § 1.321(c)); *In re Griswold*, 365 F.3d 834, 840 (C.C.P.A. 1966) (endorsing co-expiration and common ownership requirements); *Enovsys LLC v. Nextel Communs., Inc.*, No. CV 06-05306, 2008 U.S. Dist. LEXIS 118191, at *6 (C.D. Cal. Feb. 26, 2008) (holding patent unenforceable under terminal disclaimer due to lack of common ownership)).

8

In the case *sub judice*, it is not disputed that terminal disclaimers tie together the '633 and the '079 patents (Doc. No. 79, Ex. 15), the '445 and the '263 patents (*Id*., Ex. 16), and the '079 and the '263 patents (*Id*., Ex. 14).  It is also undisputed that Ab Coaster was properly assigned the rights to the '633 patent and the '263 patent.  (Doc. No. 78, Exs. 2, 3, 4.)  The Greenes argue, however, that Ab Coaster was not properly assigned the '079 patent or the '445 patent. Therefore, they conclude that there can be no common ownership in any of the three pairs tied together by the terminal disclaimers at issue here because each has either the '079 patent or the '445 patent as one of its co-members.  Thus, the issue before the Court is whether Ab Coaster owns the '079 patent and/or the '445 patent.

As to that issue, there is no dispute that there was no assignment contract related to either the '079 or the '445 patents.  Instead, Ab Coaster argues that these two patents were assigned to it in the '633 patent assignment.  The Greenes disagree, asserting that the '633 assignment did not transfer ownership of these other two patents to Ab Coaster.

This Court must apply state law "when determining the 'contractual obligations and transfers of property rights including those relating to patents.'" *Regents of Univ. of New Mexico v. Knight*, 321 F.3d 1111, 1118 (Fed. Cir. 2003) (citing *Jim Arnold Corp. v. Hydrotech Sys. Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997)).  The Greenes contend that Ohio law applies to the assignment at issue here.  Because that assignment contains no forum selection clause, the Court will apply the state law of Ohio to the contracts for assignment. *See Euclid Chem. Co. v. Vector Corrosion Techs.*, Inc., No. 1:05CV080, 2007 U.S. Dist. LEXIS 92005, at *8 (N.D. Ohio 2007) (applying Ohio law to determination of meaning of patent assignment contract), *rev'd on other grounds*, 561 F.3d 1340 (Fed. Cir. 2009).

9

In Ohio, "if a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978). When the language of a written contract is clear and can be given a definite legal meaning, a court need look no further than the writing itself to find the intent of the parties. *Westfield v. Galatis*, 100 Ohio St.3d 216, 219 (2003). Where a contract is ambiguous, however, *i.e.*, capable of more than one reasonable interpretation, a court may consider extrinsic evidence to determine the parties' intent. *See Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635 (1992).

The parties agree that the '079 patent and the '445 patent are continuations-in-part of application No. 11/607,745, which matured into the '633 patent. The '079, the '445, and the '633 patents all identify Wallace Brown and Robert W. Nelson as inventors. (Doc. No. 91 at 7, Exs. B, C and E.) On December 11, 2006, the inventors assigned the '633 patent application to Tristar Products, Inc. and on June 29, 2007, using identical contractual language, Tristar assigned the '633 patent application to Ab Coaster. The relevant language from the assignment is as follows:

> Assignors hereby sell, assign, and transfer to Assignee, the entire right, title, and interest in and to said Invention, and said Patent Application for said Invention in the United States and throughout the world, including the exclusive right to file any provisional, non-provisional, divisional, continuation, continuation-in-part, reissue, foreign, or other applications based on the Invention directly in the name of Assignee and to claim any priority rights to which such applications are entitled under international conventions, treaties, or otherwise.

(Doc. No 78, Exs. 2, 3.)

Ab Coaster argues that "[t]hese Assignments expressly grant all rights to future **continuation-in-part** applications based on the '633 patent application." (Doc. No. 91 at 7)

10

(emphasis in original).  Because the '079 and the '445 patent applications are continuation-in-part applications of the '633 patent, Ab Coaster continues, they were legally assigned to Ab Coaster by the '633 patent assignment.  The Court finds that this is a reasonable interpretation of the assignment language.

In their reply brief, the Greenes maintain that the assignment of the application for the '633 patent does not "transfer ownership of all future inventions disclosed in later-filed continuation-in-part applications, including the '445 patent and the '079 patent[,] both of which disclose new inventions not disclosed in the application for the '633 patent."  (Doc. No. 101 at 4.)  The Greenes continue:

> As highlighted [in its citation to the assignment language], the document grants only the "right to file" additional applications "based on the Invention" described in the '633 patent application.  Granting the assignee the procedural "right to file" related applications, such as foreign counterparts, is common patent procedure because in many countries patent applications are filed in the name of the company/assignee, rather than by the individual/inventor.  However, this right only extends to the single invention identified in the assignment document, namely the invention disclosed in the application for the '633 patent.  The grant is not to other future inventions first described in later-filed patent application as Ab Coaster argues.  The assignment document grants a limited right (i.e. the right to file later applications) for the invention described in the application for the '633 patent, rather than the all encompassing rights to later inventions that may be described for the first time in later patent applications as Ab Coaster asserts.

(Doc. No. 101 at 5) (footnote omitted).  The Court finds that this interpretation too is reasonable.

Because the Court determines that both interpretations offered by the parties are reasonable, the assignment is ambiguous and permits consideration of extrinsic evidence to determine the intent of parties to the assignment.  In this regard, the Greenes offer the assignments by the inventors that transferred ownership of two applications: the D565,134 ("the '134 patent") and the '263 patent applications.  These two applications are both continuations-in-

11

part of the '633 patent application.  The Greenes point out that these assignments are inconsistent with Ab Coaster's interpretation of the assignment of the '633 patent.  That is, if the '633 patent assignment transferred ownership of all continuation-in-part applications, the inventors would not have owned the '134 patent or the '263 patent at the time they contractually assigned them to Ab Coaster.  Instead, the '134 and the '263 patent applications would have already been owned by Ab Coaster pursuant to the '633 patent assignment to Ab Coaster.

Ab Coaster has not been permitted the opportunity to offer any counter-evidence or argument as to how these assignments reflect on the intent of the inventors' assignment of the '633 patent because the Greenes presented this evidence in their reply brief.  Accordingly, the Court finds that it cannot make an informed decision on the effect of the assignment to Ab Coaster of the '633 patent application.  The Court will consider evidence related to the intent of the parties to the assignment of the '633 patent in the anticipated upcoming oral argument.  For now, the Court **DENIES** the Greenes' motion as it relates to their current request for summary judgment on their declaratory judgment claim that the '079, the '445, and the '263 patents are unenforceable under the relevant terminal disclaimers.

### B. The Greenes' Motion Related to the Ab Coaster Trademark

The Greenes move for summary judgment on Ab Coaster's trademark infringement claim and their declaratory judgment claim related to potential trademark infringement.  The Greenes contend that United States Trademark Registration No. 3,407,362 is invalid and should be cancelled because the application for that trademark violated Section 10(a) of the Lanham Act, 15 U.S.C. § 1060(a)(1), and because the registration presented false and misleading information to the United States Patent and Trademark Office.  *See* 15 USCS § 1119 ("In any action

involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. . . .").

Section 10(a)(1) of the Lanham Act prohibits the assignment of intent-to-use trademark applications prior to the filing of a statement of use, unless a statutory exception is met:

> (a) (1) A registered mark or a mark for which an application to register has been filed shall be assignable with the good will of the business in which the mark is used, or with that part of the good will of the business connected with the use of and symbolized by the mark. Notwithstanding the preceding sentence, no application to register a mark under section 1(b) [15 USCS § 1051(b)] shall be assignable prior to . . . the filing of the verified statement of use under section 1(d) [15 USCS § 1051(d)], except for an assignment to a successor to the business of the applicant, or portion thereof, to which the mark pertains, if that business is ongoing and existing.

15 U.S.C. § 1060(a)(1). *See also The Clorox Co. v. Chemical Bank*, 40 U.S.P.Q.2d 1098, 1996 TTAB LEXIS 15 (TTAB 1996) (considering the effect a violation of the prohibition against assignment of intent-to-use trademark applications prior to the filing of a statement of use).

Here, there is no dispute that the intent-to-use application resulting in the "Ab Coaster" registration was assigned prior to the filing of a statement of use. Specifically, on September 11, 2006, Bodytime Wellness, LLC ("Bodytime Wellness") filed an intent-to-use application for the mark "Ab Coaster" for an exercise machine. (Doc. No. 81, Ex. 1.) Bodytime Wellness assigned the pending intent-to-use trademark application to Tristar Products, Inc. on December 11, 2006. *Id.*, Ex. 2. The statement of use was not filed until January 22, 2008, over one year after the intent-to-use application was filed. *Id.*, Ex. 1 at 31–32 of 42. The Greenes argue that the assignment is therefore invalid unless it meets the statutory exception of being assigned "to a successor to the business of the applicant, or portion thereof, to which the mark pertains, if that

13

business is ongoing and existing." 15 U.S.C. § 1060(a)(1).

Conversely, Ab Coaster contends that the assignment did not violate the Section 10(a), and that even if it did, the assignment fits into the statutory exception. As to Ab Coaster's first argument, it relies upon *Fitzpatrick v. Sony-BMG Music Entertainment, Inc.*, No. 07-cv-2933, 2010 WL 3377500, *3 (S.D. N.Y. Aug. 24, 2010) for the proposition "that because assignee used the mark 'for the same purposes intended by [assignor],' the assignment of an intent-to-use trademark application prior to the first use in commerce did not violate 15 U.S.C. § 1060." (Doc. No. 92 at 8.) Ab Coaster's argument, however, conflates the two relevant inquiries, *i.e.*, (1) whether there is a violation of the statute; and (2) if there is a violation whether the statutory exception applies. While it is true that the facts before the *Fitzpatrick* court were similar to those presented here in that there was an assignment of an intent-to-use application prior to the filing of a statement of use, the *Fitzpatrick* court did not address whether those facts constituted a violation of the Lanham Act. Instead, the *Fitzpatrick* court addressed only whether the statutory exception applied. *See id.* ("In making this argument [that the assignment was prohibited], plaintiff overlooks the 'existing business' exception to the general rule prohibiting the assignment of Intent to Use ('ITU') applications."). In the instant action, it is uncontroverted that the assignment of the intent-to-use application resulting in the Ab Coaster registration was made prior to filing of a statement of use, which is prohibited under 15 U.S.C. § 1060(a).

As to the applicability of the exception, the Greenes assert, among other things, that Ab Coaster cannot rely on it to cure the prohibited assignment because the assignee, Bodytime Wellness, did not have "an ongoing and existing business" in December 2006 at the time of the assignment. The Greenes contend that, because the "Ab Coaster" mark was not used in

14

commerce until March 2007 when the "Ab Coaster Elite" was first offered for sale, Bodytime Wellness could not have had, at the time of the assignment, "an ongoing and existing business," as that term is defined in trademark law, related to the Ab Coaster exercise devices.

In response, Ab Coaster argues that simply because the Ab Coaster mark was not used in commerce until March 2007 does not mean that Bodytime Wellness did not have an ongoing and existing business. Ab Coaster posits that "Bodytime Wellness was, at the time of the assignment, engaged in the ongoing business of distributing wellness products (such as massagers) and was actively engaged in the ongoing business of developing the Ab Coaster abdominal exercise devices including analysis of various marketing strategies, creating sample devices, filing patent applications, etc." (Doc. No. 92 at 10–11.) Ab Coaster continues that the "assignment documents executed on December 11, 2006 convey all of Bodytime Wellness' (and the inventors') right, title and interest to the development of the Ab Coaster exercise product, including intellectual property associated therewith." *Id.* at 11 ("Tristar Products, Inc. received **the portion of Bodytime Wellness' business related to the development of the device at issue in this lawsuit and all of the goodwill associated with it.** ") (emphasis in original).

Ab Coaster's position requires the Court to assume that there can be goodwill, as that term is used in trademark law, associated with the business of development of a product that will in the future be marketed with the use of a particular mark. The Greenes convincingly argue that there is no such thing in trademark law.

Goodwill can only accrue with the use of a trademark. *See Jim Henson Prods. v. John T. Brady & Assocs.*, 867 F. Supp. 175, 182–83 (S.D. N.Y. 1994) (explaining that prior to actual use there is no assignable interest in a trademark). "A fundamental principle of trademark law is that

15

trademark rights arise solely from use of a mark in commerce to represent the goodwill of an on going business." *Id.* (citing *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403 (1916); *Berni v. International Gourmet Restaurants of America, Inc.*, 838 F.2d 642 (2d Cir. 1988); 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §§ 16.01, 16.03, 19.01[1] (1992)). Thus, to the extent there exists any such thing as what Ab Coaster refers to as "intellectual property associated" with "the development of the Ab Coaster exercise product," it is only as a byproduct of contemporaneous use of the intellectual property, *i.e.*, the Ab Coaster mark. *See id.* ("to the extent there exists any such thing as a right to obtain a trademark, it is only as a byproduct of contemporaneous use of that mark").

Indeed, the Trademark Trial and Appeal Board explained this proposition clearly in *Railrunner N.A. Inc. v. New Mexico Department of Transportation*, 2008 TTAB LEXIS 58 (TTAB 2008). After citing to Section 10(a) of the Lanham Act, 15 U.S.C. § 1060 (set forth *supra*), the Board stated:

> In other words, prior to the filing of an allegation of use, *see* Trademark Act §§ 1(c)-(d), an intent-to-use ("ITU") applicant may not transfer its application to another, unless it transfers with it at least that part of applicant's business to which the mark pertains. And as the last clause of the quoted subsection [the exception] emphasizes, even that transfer is only permissible if the applicant actually has such a business, *i.e.*, if the applicant is already providing the goods or services recited in the application.
>
> As discussed at length in *Clorox Co. v. Chem. Bank*, 40 USPQ2d 1098 (TTAB 1996), the Trademark Law Revision Act of 1988, Pub. L. 100-667, 102 Stat. 3935 (1998) ("TLRA"), provided for the filing of trademark applications prior to actual use of the mark, so long as the applicant has a bona fide intent to use the mark in commerce. However, the legislative history of the TLRA reveals considerable concern that the filing of such applications may lead to trafficking in marks which are not yet in use. The restrictions on transfer of ITU applications in Trademark Act § 10 resulted from those concerns. And although the statute does not explicitly state the consequences of a non-complying transfer of an ITU

16

application, the Board in *Clorox* found Congress' intention clear: any improper transfer results in a void application, and any resulting registration must be cancelled. *Clorox*, 40 U.S.P.Q.2d at 1106. n8

*Railrunner N.A. Inc.*, 2008 TTAB LEXIS 58, at *7.

Thus, the Lanham Act required Bodytime Wellness to have assigned to Tristar (its alleged "successor") the portion of its existing and ongoing business pertaining to the Ab Coaster mark. *See* 15 U.S.C. § 1060(a)(1). Bodytime Wellness, however, did not have "an ongoing and existing business" related to the Ab Coaster mark in December 2006 at the time of the assignment because the mark was not in use, *i.e.*, Bodytime Wellness was not in the business of "providing goods or services" related to the Ab Coaster exercise device. *See Railrunner N.A. Inc.*, 2008 TTAB LEXIS 58, at *7 (defining "ongoing and existing business" as one that "is already providing the goods or services recited in the application").

Ab Coaster next argues that at a minimum there are genuine issues of material fact as to the nature of Bodytime Wellness' business at the time of the assignment that should preclude summary judgment in the Greenes' favor. This Court disagrees. The exact nature of Bodytime Wellness' business is not material to the issue before the Court. That is, what portion of that business that was in the distribution of massagers and other wellness products and what portion of it was focused on the development of the Ab Coaster exercise devises is irrelevant to the determination before the Court. The Court is tasked with determining whether Bodytime Wellness was in the business of providing goods or services in commerce related to the Ab Coaster mark. As to the inquiry, and as discussed in detail above, there is simply no dispute that Bodytime Wellness was not in the business of providing the Ab Coaster exercise device in commerce, but instead was in the business of developing the product that would in the future be

17

marked with the Ab Coaster trademark. This "business" is not the type of ongoing and existing business sufficient to fit into the exception provided for in Section 10(a) of the Lanham Act.

Accordingly, the Court concludes that Bodytime Wellness violated Section 10(a)(1) of the Lanham Act when it assigned the intent-to-use application resulting in the "Ab Coaster" registration prior to filing the statement of use. The Court further finds that, even when accepting all of Ab Coaster's evidence as true and drawing all reasonable inferences in its favor, the Greenes have shown that there are no genuine issues of material fact related to whether the statutory exception provided for in Section 10(a) applies here to cure the prohibited assignment. Therefore, the Greenes' summary judgment motion is well taken and is **GRANTED**. Based on this conclusion, the Court need not address the Greenes' arguments related to the alleged fraud in securing the registration.

### III. MOTION TO DISMISS

#### A. Standard

In evaluating a complaint to determine whether it states a claim upon which relief can be granted, the Court must construe it in favor of the plaintiff, accept the factual allegations contained in the pleading as true, and determine whether the factual allegations present any plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citation omitted).

18

**B. False Marking Claim**

In Count 10 of the third amended complaint the Greenes allege that Ab Coaster violated

35 U.S.C. § 292 by falsely marking its product or advertisements associated with its product with

United States Patent Numbers 7,232,404 ("the '404 patent") and the '445 patent.  (Doc. No. 124,

¶ 88.)  Specifically, the Greenes allege;

COUNT TEN
(False Marking under 35 U.S.C. § 292)

. . . .

88. Ab Coaster Holdings has marked upon, or affixed to, or used in advertising in connection with the Ab Coaster product U.S. Patent Nos. 7,232,404 and 7,611,445 (the "False Marked Patents") for the purpose of deceiving the public.

89. None of the claims of the False Marked Patents apply to the Ab Coaster product advertised by Ab Coaster Holdings.

90. Ab Coaster Holdings asserted both of the False Marked Patents in the Demand Letter sent to the Greenes despite the fact that these patents do not apply to the Ab Coaster product.

91. Ab Coaster Holdings has committed false marking in violation of 35 U.S.C. § 292.92.  The Greenes have suffered a competitive injury as a result of Ab Coaster Holdings' violation of 35 U.S.C. § 292, because Ab Coaster Holdings' false marking of its Ab Coaster exercise devices discourages and deters persons and companies, such as the Greenes, from commercializing competing products and deters consumers from purchasing and using competing products.

93. The Greenes request damages adequate to compensate for the competitive injury suffered by the Greenes pursuant to 35 U.S.C. § 292(b), as amended by the America Invents Act, for an amount to be determined.

(Doc. No. 124 at 12–13.)  The Demand Letter to which the Greenes refer indicates that Ab

Coaster is the owner of the '404, the '633, the '079, the '263, the '445, the '134, and the '367

patents, which the Greenes were infringing based on their sale of conterfiet Ab Coaster exercise

19

devices on eBay. (Doc. No. 124, Ex. 9.)

Ab Coaster argues that it is entitled to dismissal of Count 10 because, *inter alia*, the Greenes lack statutory standing to bring it. Section 16 of the America Invents Act, H.R. 1249, amends 35 U.S.C. § 292(b) to limit a private party's ability to sue for false marking to cases where a competitive injury has been sustained, and limits recovery to compensation for the actual injury:

> A person who has suffered a competitive injury as a result of a violation of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury.

35 U.S.C. § 292(b).

"The statute does not define competitive injury, however, 'competitive injury' has been generally defined as '[a] wrongful economic loss at the hands of a commercial rival . . . .'" *U.S. ex rel. FLFMC, LLC v. TFH Publications, Inc.*, No. 10-CV-5477, 2012 WL 1337557, at *4 (D. N.J. Apr 18, 2012) (citing Black's Law Dictionary 302 (8th ed. 2004). *See also Rogers v. Conair Corp.*, No. 10–1497, 2012 WL 1443905, at *4 (E.D. Pa. April 25, 2012) ("To establish standing under the [America Invents Act], Plaintiff must allege a tangible economic loss caused by the illegal competitive means (*i.e.*, the false patent marking).") (citing *Advanced Cartridge Tech., LLC v. Lexmark Int'l, Inc.*, No. 10–486, 2011 WL 6719725, at *2, 4 (M.D. Fl. Dec.21, 2011) and *Fisher-Price, Inc. v. Kids II, Inc.*, No. 10–988, 2011 WL 6409665, at *9 (W.D. N.Y. Dec.21, 2011)). "Formulated differently, a competitive injury is a business loss caused by a competitive means, including false patent marking, that the law forbids." *Advanced Cartridge Tech., LLC*, 2011 WL 6719725, at *2 (citation omitted).

The Greenes posit that they have adequately pled a competitive injury:

In the false marking context, the Federal Circuit has identified numerous "injuries" that may result from false patent marking. *See Forest Group v. Bon Tool, Inc.*, 590 F.3d 1295, 1302-03 (Fed. Cir. 2009) [superceded by statute in non-relevant part as explained in *Rogers v. Conair Corp.*, 2012 U.S. Dist. LEXIS 58110]. Most significantly, the Federal Circuit recognized that "costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product" as an injury resulting from false patent marking. *Id.* at 1303. Other injuries likely to be inflicted as a result of false marking include deterring innovation, stifling competition, and deterring scientific research. These injuries are suffered by the public generally as well as by each individual who participates in the market, such as either by buying or selling a product in the same field as the falsely marked product. *Id.*

(Doc. No. 130 at 8–9.) The Greenes assert that the injury they suffered was that they were forced to analyze the validity or enforceability of the '404 and the '445 patents, both of which they claim did not cover the Ab Coaster exercise device they were selling and Ab Coaster knew that the patents did not cover the product. Nevertheless, the Greenes contend, Ab Coaster asserted them in the Demand Letter sent to the Greenes. The Greenes' conclude that this injury is precisely the type of injury recognized by the Federal Circuit in *Forest Group*.

The Greenes continue, arguing that the injury is a "competitive injury" under the America Invents Act, sufficient to bestow statutory standing upon them:

Ab Coaster also cannot dispute that the injury suffered is a competitive injury. The Greenes sold an Ab Coaster abdominal exercise device on eBay (*see* [Third Amended Compl.] ¶9) and subsequently purchased additional abdominal exercise devices some of which were later sold. *See* [*id.*] ¶¶ 9-10. Thus the Greenes were in competition with Ab Coaster for a portion of the abdominal exercise equipment market.

*Id.* at 9. The Greenes' arguments are not well taken.

While it is true that the Federal Circuit identified numerous potential injuries that could constitute a competitive injury, including the cost of analyzing the validity or enforceability of a patent, its identification of these injuries did not relieve a litigant from alleging that the potential

21

injury actually caused a tangible economic business loss. In this vein, the *Forest Group* court stated:

> False marking can also cause unnecessary investment in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete. *Cf. Clontech Labs.* [*v. Invitrogen Corp.*], 406 F.3d [1347,] 1356 n. 6 [(Fed. Cir. 2005)] ("In each instance where it is represented that an article is patented, a member of the public desiring to participate in the market for the marked article must incur the cost of determining whether the involved patents are valid and enforceable.").

590 F.3d at 1303. The costs to which the *Forest Group* court refers are costs that were incurred before the potential competitor entered the marketplace–when the potential competitor is "desiring to participate in the market," or unnecessary costs incurred in product development of a "product with which a competitor would like to compete." *Id.* Unlike the instant action, these potential competitors were prevented from entering the market without incurring tangible economic losses.

The Greenes have completely failed to plead any facts, nor can this Court make any reasonable inference from the facts alleged, that the Greenes' purported injury caused a tangible economic loss. The Greenes have alleged no facts to support their conclusory statement that they were "discourage[d] and deter[red]" from the marketplace as a result of Ab Coaster's alleged conduct. By their own admission, the Greenes have "purchased additional abdominal exercise devices believed to be Ab Coaster products[,]" and marketed and sold those products despite Ab Coaster's purported false marking. (Doc. 124, ¶¶ 9–10). Moreover, the Greenes have not alleged that their business decision-makers were even aware of the alleged false marking prior to the date that they filed their first amended complaint, much less that this knowledge deceived the Greenes and caused them to take or not take any particular actions in the marketplace to their

22

economic detriment.

To state a plausible claim for relief, the Greenes were required to allege facts to support their claim that their injury, analyzing the validity and enforceability of the patents, caused them to suffer a tangible economic business loss.  The Greenes, however, point out the opposite–that they sold abdominal exercise devices in competition with Ab Coaster.  As Ab Coaster correctly points out, the case that bears the closest resemblance to the present action is *Fisher-Price v. Kids II, Inc.,* in which the court considered "whether Defendant has plausibly alleged it suffered a 'competitive injury' as § 292 requires."  2011 WL 6409665, at *9.  The court determined that, as here, where a party has not provided factual allegations demonstrating that it was actually deterred from competing in the market by an injury caused by allegedly false patent markings, a claim for "competitive injury" must fail:

> Because Defendant is competing [with Plaintiff] in the [relevant] market, it is difficult for the court to perceive how Defendant has in fact been 'competitively injured' by any 'false marking' by [Plaintiff].  Rather, that Defendant has manufactured and sold competing products, allegedly in violation of the [relevant] patent, establishes that Defendant has not been deterred or discouraged from manufacturing competing [] products in the relevant market for such products.  Thus, Defendant has not, presumably because it cannot, alleged that [Plaintiff's] asserted mismarking has prevented or frustrated Defendant's efforts to enter this market.

*Id.* at *10.

Similarly, because the Greenes entered the marketplace and sold alleged counterfeit Ab Coaster exercise devices, they cannot now claim they were discouraged from the marketplace due to any alleged mismarking by Ab Coaster.  Consequently, like the *Fisher-Price* defendants, the Greenes have not allegeD that Ab Coaster's alleged mismarking prevented them from entering the relevant market.  Therefore, even when accepting all the Greenes' factual allegations as true,

23

and drawing all justifiable inferences in their favor, the Court concludes that they have failed to allege a claim for false marking pursuant to 35 U.S.C. § 292 upon which relief can be granted. *See e.g.*, *Rogers v. Conair*, CIV.A. 10-1497, 2012 WL 1443905, at *4 (E.D. Pa. Apr. 25, 2012) (dismissing false marking claim because plaintiff "fail[ed] to allege any actual competitive injury to [plaintiff] resulting from [defendant]'s marking practices that goes beyond mere speculation and conclusory statements.").

As protection from dismissal in the event the Court found Ab Coaster's motion to dismiss well taken, the Greenes request permission to amend their third amended complaint to add factual allegations to this claim. The Greenes, however, have already made this exact request–twice. (Doc. Nos. 84, 114.) The first request was permitted (Doc. No. 98) but the second untimely request was denied by Magistrate Judge Kemp who determined that the Greenes' failed to act with diligence in making it (Doc. No. 122). Indeed, the facts as to whether the Greenes suffered a competitive injury are uniquely within their knowledge and were not something to be uncovered through discovery. The Greenes have provided no reason, nor does the Court find any reason, to re-visit the Magistrate Judge's previous denial of their request.

## IV. ORAL ARGUMENT

The Greenes have requested that the Court permit oral argument on both of their motions for summary judgment. Pursuant to the Local Rules for the Southern District of Ohio, parties may apply to the Court for oral argument if "oral argument is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented." S. D. Ohio Civ. R. 7.1(b)(2). The parties must also "succinctly explain[]" the grounds for such request. *Id.* "If the Court determines argument or a conference would be

24

helpful, the Court will notify all parties." *Id.* Whether to grant or deny a request for oral argument is left to the sound discretion of the trial court. *See Whitescarver v. Sabin Robbins Paper Co.*, Case No. C-1-03-911, 2006 U.S. Dist. LEXIS 51524, *5-6 (S.D. Ohio July 27, 2006).

In the instant action, the Court finds that oral argument would be helpful to the fair resolution of the Greenes' motions for summary judgment and hereby **GRANTS** the Greenes' request.

## V. MOOT MOTIONS

As set forth in the Background section above, on January 30, 2012, Magistrate Judge Kemp granted the parties' motions to amend their complaints. (Doc. No. 98.) That order rendered moot Ab Coaster's Motion to Reactivate Docket Number 26, Motion to Dismiss Plaintiffs' First Amended Complaint and for Leave to Amend Same Motion to Reactivate its Motion to Dismiss the Greenes' First Amended Complaint. (Doc. No. 71.)

Also as set forth *supra*, on July 9, 2012, Ab Coaster filed its Second Motion to Dismiss Plaintiffs' False Marking Claim (Doc. No. 128), which addresses the portion of Count 10 that remained after the Magistrate Judge permitted the Greenes to amend a portion of that claim. Ab Coaster's filing of this second motion to dismiss, rendered moot their previous motion to dismiss Count 10. (Doc. No. 105.)

## VI. CONCLUSION

For the reasons set forth above:

1. Ab Coaster's Motion to Reactivate Docket Number 26, Motion to Dismiss Plaintiffs' First Amended Complaint and for Leave to Amend Same Motion to Reactivate its Motion to Dismiss the Greenes' First Amended Complaint is **DENIED AS MOOT**. (Doc. No. 71.)

2.  The Greenes' Motion for Summary Judgment on Lack of Standing and Unenforceability of Certain Patents is **DENIED AS MOOT IN PART AND DENIED IN PART**. (Doc. No. 78.) Specifically, the Greenes' request for summary judgment on its declaratory judgment claim that the '079, the '445, and the '263 patents are unenforceable under the relevant terminal disclaimers is **DENIED** and the Greenes' request for summary judgment on Ab Coaster's patent infringement claims is **DENIED AS MOOT**.

3.  The Greenes' Motion for Summary Judgment to Cancel U.S. Trademark Registration No. 3,407,362 is **GRANTED**. (Doc. No. 81.)

4.  Ab Coaster's First Motion to Dismiss Plaintiffs' False Marking Claim is **DENIED AS MOOT**. (Doc. No. 105.)

5.  The Greenes' request for oral argument is **GRANTED**.

6.  Ab Coaster's Motion Second Motion to Dismiss False Marking Claim is **GRANTED**. (Doc. No. 128.)

**IT IS SO ORDERED.**

ALGENON L. MARBLEY
UNITED STATES DISTRICT COURT

**DATED:**

26